UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID HOUSTON,

        Plaintiff,

v.   Case No. 8:24-cv-1868-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

        Defendant.

## OPINION AND ORDER[2]

### I.  Status

David Houston ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of a concussion, back and knee pain, depression, and agoraphobia. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed October 7, 2024, at 66, 76, 226. Plaintiff protectively filed an

---

[1] Frank Bisignano was recently confirmed as the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

application for SSI on July 12, 2021, alleging a disability onset date of July 5, 2020.[3] Tr. at 185-91. The application was denied initially, Tr. at 66-74, 75, 90-93, and upon reconsideration, Tr. at 76-87, 88, 103-05.[4]

On May 6, 2024, an Administrative Law Judge ("ALJ") held a hearing, during which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.[5] Tr. at 40-65. On May 22, 2024, the ALJ issued a Decision finding Plaintiff not disabled since the date the SSI application was filed. See Tr. at 24-34.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by his lawyer. See Tr. at 4-5 (Appeals Council exhibit list and order), 179-81 (request for review), 336-37 (brief). On June 20, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On August 8, 2024, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[3] Although the SSI application was actually filed on July 20, 2021, Tr. at 185, the protective filing date is listed elsewhere in the administrative transcript as July 12, 2021, Tr. at 66, 76.

[4] Some of these documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[5] The hearing was held via telephone, with Plaintiff's consent. Tr. at 42, 158-59, 174.

On appeal, Plaintiff argues the ALJ erred in "mischaracteriz[ing]" medical opinions and corresponding evidence. Memorandum in Opposition to the Commissioner's Decision (Doc. No. 19; "Pl.'s Mem."), filed February 5, 2025, at 3 (emphasis omitted). On February 28, 2025, Defendant responded to Plaintiff's argument by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem."). After a thorough review of the entire record and the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national

---

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 26-33. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since July 12, 2021, the application date." Tr. at 26 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: spinal impairments; mild osteoarthritis; anxiety/PTSD and depression." Tr. at 26 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 26 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§] 416.967(b) except he can only frequently climb ladders, ropes, scaffolds, ramps and stairs; he can only frequently crouch, crawl, kneel and stoop; he can stand for six hours per day, sit for six hours per day and walk for six hours per day in an eight-hour workday; he can have no more than occasional contact with the public; there can be no changes to the work environment.

Tr. at 28 (emphasis omitted).

At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. at 32 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("32 years old . . . on the date the application was filed"), education ("at least a high school education"), lack of work experience, and RFC, the ALJ relied on the VE's testimony and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 32-33 (emphasis and citation omitted), such as "marker," "routing clerk," and "housekeeper/cleaner," Tr. at 33 (emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . since July 12, 2021, the date the application was filed." Tr. at 33 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial

evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff asserts the ALJ erred in "mischaracteriz[ing]" the opinions and corresponding evidence of Robert Young, Ph.D., who first examined Plaintiff in a consultative role in connection with the SSI claim but then became a treating psychologist, and Nicholas Gehle, Ph.D., a consultative mental examiner for SSA. Pl.'s Mem. at 3-6. Plaintiff disputes the ALJ's characterization of "mostly normal findings" by both psychologists as justification for finding their opinions unpersuasive. Id.; see Tr. at 31-32 (ALJ). Responding, Defendant argues the

ALJ properly evaluated the evidence, including the opinions, in determining Plaintiff's RFC. Def.'s Mem. at 5-12.

To start, although Defendant claims Plaintiff does not argue "that the ALJ failed to comply with the [R]egulations when evaluating the opinions," Def.'s Mem. at 5, the heart of Plaintiff's argument is that in evaluating such opinions pursuant to the Regulations, the ALJ mischaracterized evidence. Therefore, the undersigned sets out the law with respect to such opinions and analyzes the ALJ's evaluation of the opinions.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20

C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources").

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[7] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required

---

[7] Plaintiff filed his application after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[8]

Here, Dr. Young first evaluated Plaintiff in a consultative role on April 18, 2022 and authored a report the same day. Tr. at 452-56. Dr. Young wrote, "David's presentation was consistent with his self-report. Collectively he came across as a severely d[ist]ressed and severely anxious adult male with a history of psychiatric health problems originating in childhood and being significantly exacerbated by two serious [motor vehicle accidents ('MVA's)]." Tr. at 456. He elaborated, "David seems to have adequate social support from his family but limited coping skills and therefore is at risk for future behavioral and emotional decompensation." Tr. at 456. Dr. Young diagnosed major depressive disorder, recurrent, severe without psychotic features (rule out panic disorder with

---

[8] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

agoraphobia) and generalized anxiety disorder (rule out neurocognitive disorder due to a general medical condition (TBI)). Tr. at 455.

Dr. Gehle evaluated Plaintiff in a consultative role on April 22, 2023. Tr. at 502. Following the evaluation, Dr. Gehle authored a report in which he noted Plaintiff was accompanied by his mother but was able to answer questions with some trouble "giving specific information and dates." Tr. at 502. Plaintiff's "[b]ehavior during the evaluation was unremarkable." Tr. at 502. Although Dr. Gehle made a number of "normal" findings on examination, Tr. at 502-03, he also noted "moderate" symptoms of depression and "moderate to severe" symptoms of anxiety, with "the current level of mental health symptoms" being "characterized as severe." Tr. at 503. Dr. Gehle indicated Plaintiff has poor sleep. Tr. at 503. He is able to independently bathe, dress, toilet, and prepare food, but he cannot independently grocery shop or pay the bills. Tr. at 503. Dr. Gehle assigned "adequate attention and concentration" and "fair social skills." Tr. at 504. Dr. Gehle diagnosed major depressive disorder, recurrent episode, moderate, and generalized anxiety disorder (rule out unspecified neurocognitive disorder). Tr. at 505. In conclusion, Dr. Gehle wrote that Plaintiff's "mental health symptoms . . . appear to be severely impacting activities of daily living, vocational performance, and interpersonal interactions" and Plaintiff's current prognosis was "poor." Tr. at 505.

Dr. Young started treating Plaintiff in December 2023. Tr. at 508-09. After the initial session, Dr. Young noted he had reviewed his 2022 report and "information contained in approximately 40 pages of medical notes" and that Plaintiff's presentation "generally had worsened." Tr. at 508. According to Dr. Young, Plaintiff almost did not make the appointment because of nerves and then "struggled to remain in the waiting room for a few minutes prior to the session." Tr. at 508. Plaintiff also needed the company of his mother throughout the appointment. Tr. at 508. Dr. Young described Plaintiff as "visibly anxious and uncomfortable" and stated that his mother had to "fill in some of the missing information" during the session. Tr. at 508. By the third visit, in February 2024, Plaintiff again had to be accompanied by his mother but was "somewhat less acutely anxious." Tr. at 513, 515. Plaintiff was housebound unless his mother would accompany him to places. Tr. at 513. Dr. Young noted that Plaintiff's "treatment is complicated by his cognitive deficits from his MVA which continue to be impairing and remain consistent with [h]is past reports – deficit in immediate and working memory in particular." Tr. at 513.

Dr. Young authored an opinion on April 17, 2024 in which he stated Plaintiff was moderately to markedly limited in almost every area of mental functioning. Tr. at 520-26. According to Dr. Young, Plaintiff suffers from poor memory; appetite disturbance with weight changes; sleep disturbance; personality change due to a traumatic brain injury and trauma; mood

disturbance; emotional lability; oddities of thought, perception, speech or behavior; social withdrawal or isolation; decreased energy; recurrent panic attacks more than three times per week; anhedonia or pervasive loss of interests; psychomotor agitation or retardation; paranoia or inappropriate suspiciousness; feelings of guilt/worthlessness; difficulty thinking or concentrating; suicidal ideation and morbid rumination; intrusive recollections of a traumatic experience; generalized persistent anxiety; and irritability. Tr. at 520-21. Dr. Young wrote that Plaintiff's "symptom severity is significant and debilitating and [has] been resistant to treatment to date; he may require inpatient or more intensive treatment plan." Tr. at 522. The prognosis was "poor." Tr. at 522. Plaintiff could be expected to be absent from work more than three times per month. Tr. at 523.

Following this opinion, on April 22, 2024, Plaintiff was seen again by Dr. Young, who again noted Plaintiff was accompanied by his mother. Tr. at 537. "It took [Plaintiff] several minutes to reduce his acute anxiety to a level to which he could participate in therapy." Tr. at 537. Plaintiff had attempted to leave the home without his mother on a "few" occasions but was unable to do so. Tr. at 537. Plaintiff "needed redirection repeatedly to distinguish between feelings, behaviors and actual thoughts (beliefs) and he struggled with this throughout the session." Tr. at 537. The treatment continued to be "complicated by his cognitive deficits from his MVA." Tr. at 537.

The ALJ addressed Dr. Young's and Dr. Gehle's opinions as follows:

> Despite . . . mostly normal findings, [Dr. Young] stated [Plaintiff's] mental health symptoms produce a severe degree of work-related interference and that his prognosis is poor to guarded. This opinion is not persuasive as it conflicts with the doctor's own findings. The opinion seems to be based more on what [Plaintiff] said were his limitations rather than on the results of the examination. Oddly, Dr. Young seems to have started treating [Plaintiff] after this. Dr. Young saw [Plaintiff] several times, and the doctor found [Plaintiff's] condition had worsened. Yet, the actual findings upon examination are mostly normal. For example, [Plaintiff] is found to have a casual and clean appearance, is tearful, anxious, and depressed, is fully oriented, is cooperative, has an appropriate affect, has coherent thought, normal speech, intact memory, average intelligence, fair judgment and insight, and is not suicidal. Dr. Young also submitted another opinion, not in his capacity as a consultative examiner this time. The opinion contains multiple marked limitations. This opinion is not persuasive at all. It is inconsistent with the actual findings upon examination and inconsistent with the doctor's previous opinion --- when he was a consultative examiner. The undersigned notes that as a consultative examiner Dr. Young found no cognitive limitations, but as a provider he then finds mild cognitive impairments. No explanation for the change is made. The undersigned notes that diagnostic testing of [Plaintiff's] brain at the time of his accident showed no abnormal findings.
>
> [Plaintiff] underwent another independent mental health examination with Dr. Nicholas Gehle, Ph.D.
>
> . . .
>
> Despite . . . mostly normal findings, the examiner stated [Plaintiff's] mental health symptoms were severely impacting his activities of daily living, vocational performance and interpersonal interactions,

> and that the prognosis for [Plaintiff] was poor. This opinion is inconsistent with the results of the doctor's own findings. It is, therefore, not persuasive.

Tr. at 31-32 (citations omitted).

The ALJ, in focusing on the "normal" findings to the exclusion of any discussion of the severe symptoms Plaintiff displayed consistently throughout the timeframe at issue, failed to provide reasons supported by substantial evidence for finding unpersuasive the opinions of Dr. Young and Dr. Gehle. Moreover, the ALJ disputed Dr. Young's findings that Plaintiff's condition had worsened by again relying on some "normal" examination findings while failing to address the narrative sections of Dr. Young's notes that make a compelling case for a worsening of symptoms. As for the cognitive limitations that Dr. Young relied upon, even as early as the first 2022 evaluation, he wrote that "neurocognitive disorder" needed to be ruled out. Tr. at 455. Later, he consistently noted cognitive deficits particularly regarding immediate and working memory. Tr. at 513, 537.

The United States Court of Appeals for the Eleventh Circuit has made clear that an ALJ must identify genuine inconsistency between a treating physician's opinion and his notes, Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1260-64, 1267-68 (11th Cir. 2019), and must take into account "the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace," Simon v. Comm'r of Soc. Sec., 7

F.4th 1094, 1107 (11th Cir. 2021). Particularly regarding Dr. Young (once he became a treating psychologist), the ALJ's reliance on some normal clinical findings without addressing the severe symptoms noted throughout the treatment and examinations does not amount to adequate reasoning, supported by substantial evidence, for finding the opinions at issue unpersuasive. Remand for reconsideration is required. As for Dr. Gehle, the ALJ shall reconsider the opinion's consistency with those of Dr. Young and shall ensure consideration of all findings, not just the normal ones.

## V. Conclusion

In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A) Reconsider the opinions of Dr. Young and Dr. Gehle, ensuring consideration of all relevant evidence; and

(B) Take such other action as may be necessary to resolve this claim properly.

    2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 24, 2025.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record